UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

LAWRENCE A. THOMAS,

        Plaintiff,                  Case No. 2:10-cv-327

v.                                        Honorable R. Allan Edgar

GARY CAPELLO et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.    Factual allegations

Plaintiff Lawrence A. Thomas presently is incarcerated at the Baraga Maximum Correctional Facility (AMF). He sues the following AMF employees: Warden Gary Capello,

Assistant Deputy Warden William Jondreau, Resident Unit Manager Thomas Perttu, and Assistant Resident Unit Supervisor Brandon Sweeney.

Plaintiff purports to bring a class action to challenge the Incentive in Segregation Program (IISP) established at AMF as a pilot project under Director's Office Memorandum 2010-7, which was initiated on April 1, 2010. Plaintiff was convicted of a misconduct, leading to a loss of privileges (LOP) on April 2, 2010. His personal television was classified as contraband and placed in the AMF Unit 4 property room, as part of his sanction for the misconduct. (Attach. to Compl., docket #1-1, Page ID#41.) By the time Plaintiff's LOP expired, the IISP was in place. The goal of the IISP is

> to motivate prisoners to demonstrate appropriate behavior by offering incentives that encourage positive adjustment. The IISP uses a six (6) stage progression of expectations and incentives to encourage appropriate behavior. Successful progression through the six stages will assist staff in recommending prisoners for release [from segregation] while maintaining a safe and secure environment. . . .
>
> Prisoners classified to Administrative Segregation will be afforded the opportunity to progress through the six stages of the program. Prisoners will be required to adhere to the requirements of each stage and may be provided with the incentives detailed in this Program Manual. All prisoners, unless determined differently by the Housing Unit Team and/or the Security Classification Committee, will start the program at Stage 2 and with positive behavior will advance through the stages to Stage 6.
>
> Prisoner's positive and negative behavior will be evaluated by each shift on a daily basis and recorded on the Record of Segregation Incentive Program Form. Documentation of negative behavior does not need to be in the form of a Major Misconduct. The Housing Unit Team will review these Records on a weekly basis. Prisoners who do not complete all requirements or abuse the incentives provided at each stage will be evaluated and may be placed at a lower stage based on the Housing Unit Team's recommendation. Prisoners who are considered to be high risk segregation placement may progress to Stage 6, but will not be considered for General Population unless approved by the Warden or higher authority where applicable.

> Prisoners will be required to complete Essays at Stages 2 through 6 and a Journaling Program at Stages 5 and 6. The Essays are important to the IISP and prisoners may be required to re-write their Essays if not appropriate.

(Attach. to Compl., Page ID#49.) Minimal expectations at all six steps require prisoners not to threaten staff or other prisoners; to speak to staff without yelling, swearing or exposing themselves; to take a shower three times a week; and to clean their cells when supplies are passed. (*Id.*, Page ID#50.) Supplemental expectations are added at each step, including the writing of essays, not yelling at other prisoners or causing excessive noise, performing work duties in the unit, mentoring other prisoners, watching self-help videos, and working in a journaling program. Incentives are increased at each step, as well. Not until a prisoner reaches Stage 4 is he entitled to the use of a personal television.

Plaintiff objected to being subjected to the requirements of the IISP. He sent letters to each Defendant entitled, "This is so there is no mistake." In those letters, Plaintiff declared his intent not to participate in the IISP. He stated that the program was of no benefit to him because he was never going back to the general population and desired none of the incentives, except access to his television. (*Id.*, Page ID##25-27.) He insisted that he should not be required to participate in the program and should have his television returned as soon as his LOP expired. Plaintiff filed a grievance about the subject. Defendant Jondreau rejected Plaintiff's grievance as non-grievable at Step I, and Defendant Capello denied his Step II grievance for the same reason.

In addition to claiming that he should not have to participate in the program, Plaintiff claims that the procedures outlined in the program were not followed. For example, he alleges that he was not instructed about the program at intake, and that he is not being entitled to privileges otherwise allowed when LOP sanctions have expired. He complains that he has written a total of

six essays and is still at Stage 1, purportedly because of his behavior. Plaintiff complains that only two other people have stayed at Stage 1. Plaintiff disputes negative staff evaluations. He states that he only is demanding and argumentative with staff to get what he is entitled to. He further claims that, while he is is loud at times and argues with other prisoners, such behavior is normal.

Plaintiff finally was placed at Stage 2 for the first time on August 22, 2010. He moved to Stage 3 on September 6, 2010. On September 12, Defendant Truesdell allegedly fabricated a major misconduct for insolence, stating that Plaintiff had shouted, "I don't care if you move me up a stage or not Truesdell . . . RUO Meyers will do whatever I tell him to, you stupid fucking bitch." (Compl., Page ID#13; Attach to Compl., Page ID#86.) On September 13, 2010, Plaintiff complained that Defendant Truesdell delivered breakfast trays without a hat on and filed a grievance. Plaintiff ultimately was moved back to Stage 2.

Plaintiff sent a letter to Chaplain Snyder on July 5, 2010, requesting his television back. Plaintiff stated, "I want what [I] got coming: it[']s either that or cremation." On September 19, 2010, Plaintiff went to the yard and attempted to hang himself with strips torn from a bed sheet. At the time he filed his complaint, Plaintiff was again on LOP status.

Plaintiff alleges that Defendants have deprived him of his property without due process of law by forcing him to participate in the IISP and attain Stage 4 before being allowed to have his television in his cell. In addition, he contends that Defendants' failure to follow IISP procedures violates the Due Process Clause. He also alleges that the continued denial of his television violates the Eighth Amendment.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Class Action

Plaintiff purports to bring this action individually and on behalf of all others similarly situated, which the Court construes as a request for class certification. For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Mich.*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996). Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representatives of a class. Therefore, the Court will deny Plaintiff's request for class certification.

### B. Due Process

Plaintiff seeks to challenge the application of the IISP requirements to him, because he has expressed his intent not to participate in the program. He alleges that his television is being withheld from him without due process of law. In addition, he alleges that Defendants have denied

him due process by requiring him to participate in IISP without following the procedures set forth in the program documents.

With respect to Plaintiff's allegations concerning Defendants' failure to comply with the procedures set forth in the IISP documents, he fails to state a claim of constitutional dimension. Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Plaintiff's complaint about the withholding of his television also fails to state a claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *K'y Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

In the instant case, Plaintiff does not allege that his television was permanently taken from him or that he has been deprived of the ownership of his property without due process. Instead, he alleges that his television was removed from his cell and placed in the prison property room as part of a sanction imposed after he was convicted of a misconduct. He does not dispute the actual removal of his television when he was placed on LOP status.[1] He instead complains that the television was not returned to him at the end of the LOP period because he has not yet met the requirements of the IISP. In other words, Plaintiff does not allege that he has been deprived of the ownership of his television, he alleges only that he cannot have the television in his cell. As a result, Plaintiff does not allege the actual taking of his property without due process.[2] Rather, Plaintiff's claim rests on an implied liberty interest in possessing a television in his cell while he is housed in segregation.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427

---

[1] By his own allegations, the actual removal of his television from his cell was done only after he had been charged, heard and adjudicated on a misconduct ticket. As a result, by his own admissions, the taking of the property occurred only after Plaintiff had received due process. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

[2] Indeed, had Plaintiff alleged that a Defendant actually took or destroyed his property, he would not be challenging the IISP, which does not authorize the permanent taking of any prisoner's property. Instead, his claim would be that some Defendant acted outside of established state procedures. In that circumstance, his claim would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. If a Defendant acted outside state policy to take the property, Plaintiff cannot and does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, the interest in issue is limited to Plaintiff's desire to have the use of a television while he is in segregation. Defendants refusal to allow Plaintiff to possess a television in his cell does not amount to an atypical or significant hardship protected by the Due Process Clause. He therefore fails to state a due process claim.

### C. Eighth Amendment

Plaintiff next claims that the conditions and restrictions imposed upon him as a segregated prisoner in an institution with an IISP have caused him mental distress in violation of his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per

curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff complains about a single condition of his segregation under the IISP – the inability to have his television in his cell. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Hudson v. Lincoln County*, 39 F. App'x 219, 220 (6th Cir. 2002) (the fact that segregation unit was cold and the prisoner did not have access to newspapers or television did not rise to the level of a viable Eighth Amendment claim) (citing *Walker v. Mintzes*, 771 F.2d 920, 925-26 (6th Cir. 1985)); *Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) ("forcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim"); *see also Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th

Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Watson v. McClanahan*, No. 99-6124, 2000 WL 922899, at *2 (6th Cir. June 27, 2000); *Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000). As such, Plaintiff fails to state an Eighth Amendment claim against Defendants.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: 5/18/2011          */s/ R. Allan Edgar*
                                             R. Allan Edgar
                                             United States District Judge